RECEIVED

AUG 09 2019

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

NATALIE GREEN,
2007 S. 8th Ave., Maywood, IL 60153          )
                                             )     Civil Action No. _____
                    Plaintiff,               )
          v.                                 )
                                             )     JURY TRIAL DEMAND
                                             )
U.S. MERIT SYSTEM PROTECTION BOARD           )
1615 M Street, N.W., 6th Floor               )     DATE: August 8th 2019
Washington, DC 20419                         )
                                             )
and                                          )
                                             )
U.S. MERIT SYSTEM PROTECTION BOARD           )     1:19-cv-05404
Office of General Counsel, in their official capacity )  Judge Joan H. Lefkow
As representative of U.S. Merit System Protection )   Magistrate Judge M. David Weisman
Board                                        )
1615 M Street, N.W., 6th Floor               )
Washington, DC 20419                         )
                                             )
and                                          )
                                             )
US. OFFICE OF PERSONNEL MANAGEMENT           )
1900 E Street, NW.                           )
Washington, D.C. 20415                       )
                                             )
and                                          )
                                             )
JEFF T.H. PON,                               )
In his official capacity as Director of the  )
U.S. Office of Personnel Management          )
1900 E Street, NW.,                          )
Washington, D.C. 20415                       )
                    Defendants.              )

## PLAINTIFF'S COMPLAINT

Plaintiff states: she is a FERS retiree from the US Postal Service. She began her career on 07/15/89, as a career permanent employee working in a creditable service position up until she submitted her Application for Immediate Retirement due to sustaining a permanent disability that during the same time she was also eligible to receive workman's compensation. Plaintiff did in

fact receive workman's compensation for a permanent work related injury, up until she submitted her application for immediate retirement to the her employer. Plaintiff's retirement application was certified on or about 02/4/2003 and then sent on to the Office of Personnel Management who then approved it on or about 05/09/2003 of that same year under the FERS retirement benefit plan. Appellant held the position of a Flat Sorter Operator, Saved Grade 6, level O prior to her retirement. As a retiree, Appellant under the law was also entitled to earn up to 80% of her last income earned from her wages prior to retirement. On or about 01/26/2016, Plaintiff began working for a Government Contracting Agency named CACI, Intern'l as a Contract Service Employee working under the Government Service Contract pursuant to the McNarama -O'Hara Service Contract Act of 1965 (SCA), pursuant to 41 USC 351, sec 6701-6707. Under said Act, the law states that the contracting agency is supposed to pay their employee according to the laws enacted under said contract.

Within said Act, the contracting agency is supposed to pay their contracting employees 1. Wages according to the law and separate and apart, 2. They are supposed to pay for the Health and Welfare Fringe Benefits for these services that the contract employee, of which, Plaintiff is currently working under said contract. Under the McNarama-O'Hara Service Contract Act of 1965, the law requires that the contracting Agency pay for the Health and Welfare fringe benefits of its contract employees per its contractual obligation with doing business with the federal government. And the SCA laws has put in place enforcement to ensure that each contracting agency is following the laws according to the 41 USC 351, sec 6701-6707, wherein it mandates that the contracting employers not combine (emphasis added), the contract employee wages together with their provided Health and Welfare Benefits being provided for the Health and Welfare of their employees. And in doing so, the Department of Labor regulates this Act, wherein which, they mandate pursuant to 41 USC 351, sec 6701-6707, that the contracting employers place their pre-determined contribution benefit payments into the employer's established mandated Health and Welfare Benefits fund to ensure that the required amount has been provided as required by law. From this benefit fund, the Contracting employers are unable by law, to make any withdrawal from the fund. This funding is strictly for the sole purpose of abiding by the statute and regulation to have a pre determined established amount in this Trust fund for each of its contracting service employees. However, the employers are allowed to negotiate the Health and wealth fare rates with the providers of service to the employees to get the benefits provided at a reasonable cost. And it is the amount of the residual contributed payments made by the employers into this fund that remains as an overage in the Trust account that is at issue. The plaintiff contracting employer is mandated by law to provide a certain specified amount into the Health and welfare fund for their employees, and each employee is entitled to receive the full amount of their Health and Welfare benefits. It is not supposed to be added, nor considered as "wages", the law forbids this. However, the law does allow the employers to give the overage in the savings accumulated in the Trust Fund holding said benefits back to their contract service employees in payments to be distributed in the same paycheck that the employers issue to their employees for Wages earned. However, they are required and mandated by law, to show on the employees paycheck the distinction in the what is being paid to them as "wages" and what is being given to them in cash payments as a residual payment of their Health and welfare fringe benefits as they are required to pay the employees their full benefits, set apart from their wages. And they do distinction the payments on the employees paycheck. It is this overage, that the Office of Personnel Management has decided to use, in violation of the

law, to use in their wage earning capacity determination to make an erroneous calculation using this exempted income by law pursuant to 41 USC 351, sec 6701-6707 and also in violation to the the Fers Retirement Statute 5 USC 8455(a)(2)(b)(2)(A)(B)

Plaintiff was working under this same contract, at the time that the Office of Personnel Management (OPM) Terminated her FERS entitled Retirement Permanent Disability Benefits unlawfully in actions that were not in accordance to statute pursuant to 5 USC 8455(a)(2)(b)(2)(A)(B), FERS Retirement Statute and violation of established regulations by OPM at 5 CFR 1209 ( and in violation of the SCA, pursuant to 41 USC 351, sec 6701-6707, alleging that she had exceeded the 80% allowable income earned from "wages" or "self-employment" which Plaintiff did not.

OPM own regulation, to which, they claim difference to have it followed, did not follow the law as written in plain language at 5 USC 8455(a)(2)(b)(2)(A)(B). and they did not follow their own regulations at 5 cfr 831.1209 (c) (1)(3)(d)(3) which defined income and wages and (f) which identifies conditions in which Office of Personnel Management is not to consider exempted categories of income when making a wage earning determination. And funds received as payments of "healthcare and welfare benefits" is on that list.

The Office of Personnel management has relentlessly subjected Plaintiff to violations of the prohibited personnel practice contained with 5 USC 2301, 2302 and other statutes as identified by the plaintiff. They have subjected her to denial of her rights and interest entitled to her under the law as been stated. They have performed arbitrarily and capriciously in the decisions rendered not in accordance to the laws as written. They have discriminated against Plaintiff in their retaliatory actions thorough out the adjudication of her appeal when she first submitted a request for reconsideration and asked that they review ALL of Plaintiff's submitted documentation supporting her positions and they have refused and denied her the right to due process entitlement under the law to have a fair and proper appeal on fairness and righteousness. Instead, Office of Personnel Management, together with the assigned Administrative Judge have gone to length to mislead, misconstrue and distort the record all in an effort to deny and retaliate against her for pursuing her rights and entitlement. And the Administrative Judge, mishandled the due process entitlement of Plaintiff entitled retained rights as a former federal employee to be placed into a database or listing identifying her eligibility for "reemployment back into the federal government, (not back into the post office or office of personnel management) just the entitled right to be allowed to be identified within the system as eligible to be hired by "special authority" or as a Fers Retired disabled annuitant of the Federal government. Even if the consideration is made for 'excepted positions". She should have a right to be identified for available select ability and the Office of Personnel Management denied the Plaintiff those rights with the assistance of the Administrative Judge in their discriminatory action to retaliate against her for pursing her entitled legal rights. This to include the entitled rights that she is entitled to as a result of the unlawful termination of her benefits on 04/09/2018. Plaintiff has been suffering emotionally, psychologically, and financially as a result of these actions taken by both agencies and she ask the court to provide her with a remedy that is fair and equitable under the law. She ask for $750,000. And what ever else the judge awards for the egregious actions taken by both these agencies who is supposed to be entrusted to enforce the law. Not violate it.

## Jurisdiction

exist in this matter for all of the above reasons pursuant to:

28 U.S.C.1331, 5 U.S.C.7703, 5 U.S.C 7702, 5 U.S.C 2302 (b), 2301(b), 2303,
42 USC 2000E-5, 41 U.S.C. 351, secs. 6701-6707, 5 U.S.C. 8455(a)(2), sec 504 of
Rehabilitation Act of 1973, 29 U.S.C. 793 Sec.503 of the Rehabilitation Act of 1973,
29 U.S.C. 797, 5 U.S.C. 2301, 5 U.S.C. 2302, 5 USC 8337 or 8451, 8455 (a)(2), 5 USC 8901,
5 U.S.C. 3323 (b)(1).

Plaintiff is a FERS Retirement Disability Annuitant who was receiving her benefits since
05/09/2003, the time in which she was approved by the Defendant, Office of Personnel
Management upon her submitting an FERS Immediate application for Permanent Retirement
Disability Benefits. Plaintiff received them, without stoppage, until they were terminated on
04/09/18, allegedly due to her exceeding the 80% wage earning capacity found in Federal Statute
at 5 U.S.C. 8455(a)(2)(b)(2)(A)(B), but her referenced Exempted income at current issue was
protected under the McNarama-O'Hara Act of 1965 Service Contract Act (SCA), as Plaintiff on
01/25/2016, began working on a Service Contract that her Contracting Employing Agency was
legally bound to follow its laws, rules and regulations as it pertained to the payment of the
Plaintiff's wages she was mandated to received in accordance to the law, as well as being legally
bound by law to provide a pre-formulated amount of contribution payments into a trust fund
specifically designated for the sole purpose of also having established a statutory mandated Trust
fund, from which funds within where placed their by the employer to provide for the Mandated
Health and Welfare benefits of each employee who worked on this particular contract type.

The SCA laws, statutorily also allowed for the contracting employers to provide any residue
overage benefit funds left, upon a lesser amount being negotiated between them contractual was
paid directly from this fund, the law allowed for the employer to then pass on the residual benefit
amount received back as overage, to their employees as the balanced entitlement to the
remainder of the funds that were allocated for payment contribution toward the employees
Health and Welfare Benefits as determined by law. This law is under the authority and is
regulated by the Department of Labor's Service Contract Act Division. It's not optional for the
contracting employers to provide for the Health and Wealth fare benefits of each of their contract
service employees, It's the law, as per 41 U.S.C. 341, sec. 6701-6707 of the Act. They are
mandated to provide all of the pre-determined contribution amount into this established Trust
Fund (emphasis added). This established fund is not additional wages for each employee, and
the SCA Act ensured to that the contracting agency was mandated to inform each contract
employee that they were entitled to wages separate and apart from their provided benefits,
regardless if they were taxable or not. The funds were exempted by this SCA statute from being
income for wage earning purposes. And the Office of Personnel Management, also provide
some of the same type of Health and Welfare Benefits to the Plaintiff prior to its termination, in
which, they where never considered wages for making a wage earning capacity determination on
the Plaintiff. As the Office of Personnel Management has established laws throughs their own
regulation which Exempted all income the Plaintiff received from her FERS Disability
Retirement Health and Welfare Benefits pursuant to 5 CFR 831.1209 (c)(1)(3)(d)(3) (f).

Plaintiff reasonably believes that to disregard those same benefits that the Government themselves mandate that any company that enters into a government contract, specifically under the McNarama-Ohara Act of 1965 Contracting Service Act (SCA) must provide for the fair pre-determined wages, as well as to provide separate and apart, the same type of equivalent Heath and Welfare fringe Benefits that the Government offers to their employers, military personnel and also what is negotiated and contractually provided through a Fund, the "Civil Service Retirement Fund" ( the same type of requirement to set up such a fund for the sole purpose of providing through it, the contributions that are being made for the sole purpose of providing Health and Welfare Benefits to their recipients. And the Plaintiff reasonably believes that the Office of Personnel Management is using an Abuse of Descretions to intentionally and self servingly use their granted regulating authority to Arbitrarily and capriously deny Plaintiff her entitlement to continued receipt of her benefits, without incorrectly calculating her Exempted Health and Welfare Benefits in with her actual wages to make an discriminataory decision to terminate her rightful entitlement to receive them and denying her civil rights as well to receive entitled property without being retaliated against because she is envoking her rights to receive fair, honest and just treatment in the providing of her entitled rights just because appellant has received a FERS Retirement Benefits as determined by law, as allowed by "checking off some boxes" in which Plaintiff completed her statement at the time of submitting her Application for Immediate Disability Retirement. Wherein Plaintiff has been subjected unrelentless to the gross blatant attempts to distort the record in this case in a light more favorable for the Defendant, responsible for Terminating her benefits. Plaintiff has been repeatedly unrelentless had to defend against the outright made written untruths into the record in which has caused her extreme Exterity, stress, strain, medical issues, financial devastation and just a sense of unwellness as a result of having to product extraneous, responses to the repeated attempts to divert Plaintiff's a fair and impartial appeal process. Because it has been anything but, complete hostility shown in the decision that the Administrative judge has been deciding against the Plaintiff throughout this entire process. It has been a total nightmare! Emphasis added to the highest degree. I'm almost on the verge of having total mental unrest. These actions by both these agencies has been a total travesty to what both of those offices are supposed to represent and I ask this court to grant Plaintiff whatever degree of Relief seen righteous, taking into consideration that these actions of malicious conduct, to distort the record evidence in an intentional attempt to violate Plaintiff's rights and interests at the lengths they have gone thorough all the while taking complete and total advantage of their positions in authority is not fair to the aggrieved party who's only recourse is to pursue justice through a system that is not justice is unfair to the person who is helpless on the receiving end. Who can not even afford to seek legal representation to fight on her behalf against this injustice.

## Venue

Venue is proper pursuant to Title 28 U.S.C. Section 1391 and as other applies, where Section 1391 in that plaintiff resides, the defendant does business, and the claims arose in multiple districts.

### The parties

Plaintiff, Natalie Green is a citizen of the United States, and resident of the State of Illinois, residing in Maywood, IL, County of Cook, and is an African-American female, of black color, who has a recorded documented disability that from which Plaintiff decided to switch her receipt of Worker man's compensation benefits at the time she decided to submit her application for Immediate disability Retirement for the same disability that she was now seeking FERS Retirement Benefits and was approved for them from 05/09/2003 up until termination on 04/09/18.

Defendant Office of Personnel Management has been at all times relevant, the provider of Plaintiff's FERS Retirement Permanent Disability Benefits, and their main headquarter is located in Washington DC, Plaintiff is told on information and belief and provides Health and Welfare Benefits for over 50 regular people.


I request a TRIAL BY JURY and I pray for the monetary relief of over 2,000,000+ and all fees and expeditors she has had to pay in defense of seeking and protecting her rights.


Natalie Green, pro se, non-attorney
2007 S. 8th Ave.
Maywood, IL 60153
(773)706-2578

IN THE UNITED STATES DISTRICT COURT
FOR THE *NoRTHERN DiSTRiCT of ILLiNoiS*

NATALIE GREEN,                                      )
2007 S. 8th Ave., Maywood, IL 60153                )
                                                   )       Civil Action No. _____
                    Plaintiff,                     )
            v.                                      )
                                                   )
                                                   )       JURY TRIAL DEMAND
                                                   )
U.S. MERIT SYSTEM PROTECTION BOARD                 )
1615 M Street, N.W., 6th Floor                     )       DATE: **August  _9_  , 2019**
Washington, DC  20419                              )
                                                   )
and                                                )
                                                   )
U.S. MERIT SYSTEM PROTECTION BOARD                 )
Office of General Counsel, in their official capacity )
As representative of U.S. Merit System Protection  )
Board                                              )
1615 M Street, N.W., 6th Floor                     )
Washington, DC  20419                              )
                                                   )
and                                                )
                                                   )
US. OFFICE OF PERSONNEL MANAGEMENT                 )
1900 E Street, NW.                                 )
Washington, D.C. 20415                             )
                                                   )
and                                                )
                                                   )
JEFF T.H. PON,                                     )
In his official capacity as Director of the        )
U.S. Office of Personnel Management                )
1900 E Street, NW.,                                )
Washington, D.C. 20415                             )
                    Defendants.                    )

## SERVICE LIST

U.S. MERIT SYSTEM PROTECTION BOARD
1615 M Street, N.W., 6th Floor
Washington, DC  20419

U.S. MERIT SYSTEM PROTECTION BOARD
Office of General Counsel, in their official capacity
As representative of U.S. Merit System Protection Board
1615 M Street, N.W., 6th Floor
Washington, DC 20419


US. OFFICE OF PERSONNEL MANAGEMENT
1900 E Street, NW.
Washington, D.C. 20415


JEFF T.H. PON,
In his official capacity as Director of the
U.S. Office of Personnel Management
1900 E Street, NW.,
Washington, D.C. 20415
Defendants.

William Barr
US Attorney General
US Dept of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530


Jessie K. Liu
US Department of Justice
United States Office for the District of Columbia
501 Third Street NW
Washington, D.C. 2001

US Attorney
US Dept of Justice
219 S. Dearborn
Chicago, IL 60604


Natalie Green
2007 S. 8th Ave
Maywood, IL 60153
(773)706-2578

*Attachment A*

# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD
### CENTRAL REGIONAL OFFICE

NATALIE GREEN,
            Appellant,

    v.

OFFICE OF PERSONNEL
MANAGEMENT,
            Agency.

DOCKET NUMBER
CH-0845-18-0576-I-1

DATE: June 6, 2019

Leroi Pulliam, Esquire, Oak Park, Illinois, for the appellant.

Tiffany Slade, Washington, D.C., for the agency.

**BEFORE**
Katherine Beaumont Kern
Administrative Judge

## INITIAL DECISION

### Introduction and jurisdiction

The appellant, Natalie Green, timely appealed from an August 16, 2018 reconsideration decision issued by the Office of Personnel Management (OPM) in which OPM terminated the appellant's disability retirement benefits on the ground that she had been restored to earning capacity and sought to recover an overpayment for the period between July 1, 2017, when her annuity should have been terminated, and March 30, 2018, when it was. Initial Appeal File (IAF), Tab 1. The Board has jurisdiction over this appeal. 5 U.S.C. § 8461(e)(1); 5 C.F.R. § 841.308.

I held the appellant's requested hearing on March 26, 2019. IAF, Tab 44, Hearing CD (HCD). For the reasons stated below, the OPM reconsideration decision is AFFIRMED.

### Analysis and findings

2

Under 5 U.S.C. §8455(a)(2), earning capacity is deemed restored if an annuitant who is receiving a disability retirement annuity, under 60 years of age, receives income from wages or self-employment or both in any calendar year that equals at least 80% of the current rate of pay of the position the annuitant occupied immediately before retirement. Payment of such an annuity generally terminates 180 days after the end of that calendar year. *Id.* In a final agency decision dated August 16, 2018[1], OPM terminated the appellant's disability retirement annuity on the ground that she had been restored to earning capacity, based on her 2016 income, and issued a notice of collection for the overpayment resulting from the time period between the date her annuity should have been terminated (180 days from the end of 2016) and the termination of her benefits on March 30, 2018. IAF, Tab 15, pp. 6-9. This appeal timely followed.

---

[1] The appellant received a January 23, 2018 letter from OPM showing she had exceeded the income limitation for a disabled annuitant based on information received from SSA. IAF, Tab 12, Subtab 3.1. On February 23, 2018, the appellant responded to the calculation, arguing her reported income should be reduced by the health and welfare (H & W) benefit she received from her employer. *Id.* at Subtab 3.2(a). By letter of March 12, 2018, OPM informed the appellant that their second review indicated the "initial decision still stands." *Id.* at Subtab 3.3. On April 11, 2018, the appellant filed a Board appeal concerning the termination of her benefits. *See* CH-0841-18-0317-I-1. On April 17, 2018, OPM informed the appellant of a $12,664.22 overpayment created by payments made after her annuity should have been terminated. *Id.* at Subtab 3.5. On April 19, 2018, OPM notified the appellant that her annuity would be terminated effective June 30, 2017, as well as her enrollment under the Federal Employees Health Benefit Program. *Id.* at Subtab 3.6. On May 16, 2018, the appellant requested reconsideration. *Id.* at Subtab 3.7. On May 30, 2018, the appellant's Board appeal was dismissed as premature, on the basis that no final agency decision (reconsideration decision) had been issued. *Green v. Office of Personnel Management,* CH-0841-18-0317-I-1 (May 30, 2018); *aff'd Green v. Merit Systems Protection Board*, 2018-2264 (Fed. Cir. April 4, 2019). OPM considered the appellant's April 11, 2018 Board appeal as a request for reconsideration and, on August 16, 2018, OPM issued a reconsideration decision and the appellant timely appealed. IAF, Tab 1, pp. 9-12.

3

It is undisputed that the appellant retired on disability from a position as a Machine Operator with the United States Postal Service (USPS), P-06, Step O, in May 2003 under the Federal Employees' Retirement System (FERS). IAF, Tab 9, p. 19. The appellant went on to receive an Associates Degree in Paralegal Studies in 2005 and a Bachelor of Arts Degree in Political Science in 2008. *See* Tab 9, p. 32. She was working as a paralegal in 2016. The Social Security Administration (SSA) reported to OPM that the appellant's earned income for 2016 – when she was less than 60 years old – was $48,955.00. IAF, Tab 15, pp. 20-21. In its final agency decision OPM calculated: the 2016 rate of pay of the position which the appellant occupied immediately before retirement was $58,231.00; 80% of that amount was $46,584.00; and the appellant's reported 2016 income of $48,955.00 exceeded the 80% limitation by $2,370.29. IAF, Tab 15, pp. 6-9. OPM terminated the appellant's disability retirement on the ground that she had been restored to earning capacity, based on her 2016 income. In addition, because OPM paid the appellant's annuity through March 30, 2018 – several months beyond the July 1, 2017 effective date of termination – OPM asserts that the appellant was overpaid $15,926.00, to which $12,664.22 remains on balance. *Id.* OPM proposed a collection of $150 per month for 84 months, followed by a single payment of $64.22. *Id.* at pp. 9-10.

Ms. Green alleges that she did not exceed the statutory earning capacity, that her annuity benefits were wrongfully terminated, and that she does not owe an overpayment. *See* IAF, Tab 1. In her words: "The agency is wrong in taking this action because I was entitled to legally and rightfully receive the alleged benefit amount they claimed caused an overpayment. Also, they are wrong in allegedly causing me at fault for causing an overpayment that did not factually occur." *Id.* at p. 2. Ms. Green's dispute with the agency's determination centers on the inclusion of a fringe benefit – a $4.02 per hour salary increase to cover

4

health and welfare benefits – in the calculation of her earned income. IAF, Tab 12, Subtabs 3.4, 3.9. These are the claims at issue in the instant appeal.[2][3]

Legal Standard

The appellant has the burden to establish, by a preponderance of the evidence, her eligibility for continuation of her Federal Employees Retirement System (FERS) disability retirement annuity. *See, e.g., Cheeseman v. Office of Personnel Management,* 791 F.2d 138, 141 (Fed.Cir.1986), *cert. denied,* 479 U.S. 1037 (1987). A preponderance of the evidence is that degree of relevant evidence

---

2 The appellant also filed a motion to reinstate her disability benefits based on her 2018 income, but later rescinded her request. *See* IAF Tabs, 46, 47. The appellant stated in her rescission notice that her intent is to seek reinstatement through OPM first. IAF, Tab 47. This is procedurally correct as the Board cannot review this claim until either OPM issues a final decision on the matter or OPM refuses or improperly fails to issue a final decision. 5. U.S.C. § 8461(e)(1); *Okello v. Office of Personnel Management,* 120 M.S.P.R. 498 ¶¶ 15–16 (2014); *See Daniel v. Office of Personnel Management,* 245 Fed. Appx. 969 (2007).

3 In her appeal, Ms. Green also included a letter to OPM dated July 6, 2018, requesting that OPM "establish her eligibility for reinstatement into the federal government and to request placement assistance to include the placement into the merit promotion program." IAF, Tab 1 at Ex. D. As these issues pertain to reemployment, as opposed to entitlement to disability benefits, and because each is handled by a different department within OPM, I informed the parties at the prehearing conference that I would open a new appeal pertaining to these issues. The parties had no objection at the time and the appellant's attorney stated he appreciated the new appeal being opened and that the severing of the issues "sounds good." IAF, Tab 29. I opened a second appeal as, CH-3443-19-0216-I-1. Ms. Green strenuously objects to severing these issues and the "mishandling of her appeal," arguing that I have shown "blatant bias and favoritism for the agency in the form of attempting to distort, mislead, and misrepresent any appeal filings the appellant makes on the record," and that "said mal-behavior and gross arbitrary and capricious actions not in accordance to the law, to include a blatant display of abuse of discretion by AJ Kern has continued over into her actions of separating / detaching appellant's appeal as it relates to appellant's 'other right and interests'..." IAF, Tab 47, pp. 9-10. I find no prejudice to the appellant's interests in proceeding on these issues separately. Ms. Green's motion to "rejoin" these issues with the instant appeal is denied.

5

that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. 5 C.F.R. § 1201.4(q).

OPM, however, must present evidence demonstrating the basis on which it reached its decision. *Hollifield v. Office of Personnel Management*, 83 M.S.P.R. 563, 569 (1999). Likewise, where OPM claims that an individual has received an overpayment of annuity benefits, it bears the burden of proving, by preponderant evidence, the existence and amount of the overpayment. *Levine v. Office of Personnel Management*, 72 M.S.P.R. 549, 551 (1996).

Under 5 U.S.C. § 8455(a)(2), earning capacity is deemed restored if an annuitant who is receiving a disability retirement annuity who is under 60 years of age receives income from wages or self-employment or both in any calendar year that equals at least 80% of the current rate of pay of the position occupied immediately before retirement. Payment of the annuity of such an annuitant terminates 180 days after the end of that calendar year. *Id.* Under its implementing regulation, 5 C.F.R. § 844.402, OPM states a FERS disability annuitant is considered restored to earning capacity and her annuity is terminated if, "income from wages or self-employment or both during the calendar year equals at least 80 percent of the current rate of basic pay of the position occupied the year before retirement." Section 844.402(c) provides that "[e]arning capacity for the purposes of this section is demonstrated by an annuitant's ability to earn post-retirement income in exchange for personal services, or a work product, or as a profit from one or more business wholly or partly owned by the disability annuitant and in the management of which the annuitant has an active role." The regulation states that, "Income for the purposes of this section is not necessarily the same as income for the purposes of the Internal Revenue Code." 5 C.F.R. §844.402(c)(1). For example, while unearned income such as inheritance and interest on personal savings accounts are part of income for tax purposes, these kinds if income do not reflect an individual's earning capacity and, therefore, are

6

not considered income for purposes of these regulations. *See* FERS – Disability Retirement Request for Comments, 53 FR 33433-01, 1998 WL 253821 (1988). In determining if an employee's earning capacity is restored, OPM has adopted the policy that an annuitant's income for the purposes of social security and Medicare taxes, as reported on the employee's W-2, Wage and Tax statements, is the primary indicia of her wages. *See* Annuitants Report of Earned Income Instructions, IAF, Tab 15, p. 71; *Balick v. Office of Personnel Management*, 85 F.3d 586 (Fed. Cir. 1996).

<u>The appellant has not shown that OPM erred in finding her earning capacity restored.</u>

The appellant does not dispute that the income of $48,955.09 reported on her W-2s to the IRS for the calendar year 2016 includes: a W-2 from employer Caci International, Inc. documenting $47,355.09 in Social Security Income (Box 3) and Medicare Wages (Box 5) and a second W-2 from employer Michael P. Concannon, Ltd., documenting $1600.00 in both the Social Security and Medicare boxes. IAF, Tab 15, p. 82. She also does not dispute that the base salary in 2016 for the position she last held was $58,231 and that 80% of the base salary was $46,584.80. Therefore, it is undisputed that the income the appellant reported to the IRS for calendar year 2016 exceeded the 80% limitation by $2,370.29.

The appellant argues, however, that OPM and the IRS use different methods for calculating income according to OPM's own procedures. By the appellant's calculation, her $48,955.09 reported income should be reduced by the amount of "health and welfare benefit" she received, leaving her with an income of $43,942.19 for 2016 – an amount $2,642.61 below the 80% income limitation for receipt of disability retirement benefits. IAF, Tab 9, Subtab 3.2(a). The health and welfare benefit, to which the appellant refers, is a fringe benefit payment obligation on federal service contractors requiring that the employer provide a benefits package to each employee covering medical insurance, pensions, workers compensation, life insurance, disability insurance, etc. *or*

7

provide cash equivalent payments to covered employees in lieu of providing the benefits themselves. *See* 41 U.S.C. § 6703(2) (Formerly cited as 41 U.S.C. § 351, the McNamara-O'Hara Service Contract Act) ("SCA"). Here, the appellant states that her employer, Caci, Inc., paid her a rate of pay of $21.05 per hour, plus a fringe benefit hourly rate of $4.02 per hour. IAF, Tab 15, p. 64, 73. The company's health and welfare benefit normally would be reduced by the cost of any benefits elected by the employee or provided by the employer. *Id.* Here, the appellant did not elect to receive any benefit from Caci because she was receiving health and welfare benefits from OPM. *Id.* at pp. 64-65. As a result, her W-2 earnings from Caci reflect her base rate of pay plus her fringe benefit. As the appellant reiterated at hearing, while her employer does not differentiate between her salary and fringe benefits on her W-2, she believes the "health and welfare" benefit she received should have been deducted from her income in calculating her earning capacity. HCD, Appellant Testimony.

OPM's implementing regulation for FERS disability retirement annuitants that have been restored to earning capacity does not define "earning capacity" beyond stating that it is demonstrated by an annuitant's ability to earn post-retirement income in exchange for personal services or work product. *See* 5 C.F.R. § 844.402. Cases analyzing the definition of income under under this liberal standard are sparse, but the appellant failed to identify any instructive case consistent with her reading of the regulation. Her reference at hearing to *Gibbons v. Office of Personnel Management*, 38 M.S.P.R. 393 (1988) is inapposite. First, *Gibbons* applied to a CSRS annuitant and, second, the appeal concerned undistributed earnings from a subchapter S corporation which the Board held did not contribute to the appellant's earning capacity because there was no evidence the appellant received the profits and therefore it was constructive income only. *Id.* at 397. The appellant also cites to the implementing regulation applicable to CSRS annuitants which, while not applicable, is nevertheless illuminating. Pursuant to OPM's regulation on

8

Termination of Disability Annuity because of Restoration to Earning Capacity, "wages" means the gross amount of all remuneration for services performed by an employee unless specifically excluded. 5 C.F.R. § 831.1209(d). As a general rule, remuneration as wages "does not include any contribution, payment, benefits furnished, or service provided by an employer" in any of the following areas: general retirement system, medical or hospitalization health benefit plans, life insurance plans, sickness or accident disability pay beyond 6 months, workers' compensation benefits, value of meals and lodging provided at the convenience of the employer, moving expenses, educational assistance programs, dependent care assistance programs, scholarships and fellowship grants, de minimus fringe benefits, qualified group legal service plans, uniforms and tools, and amounts that an employer pays the individual specifically for traveling or other ordinary and necessary expenses incurred in the employer's business. 5 C.F.R. § 831.1209(d) (3). Reading this selection from the regulation, as cited by the appellant (*See* IAF, Tab 41, p. 5), the appellant reasonably believed that a health and welfare benefit, such as the one mandated by the SCA, is generally excluded from wages. The regulation goes on to state, however, that there are two exceptions to this general rule: (1) when it is provided under circumstances in which either a salary reduction or deferral agreement is used; and (2) when the employee had the opportunity (whether exercised or not) to elect to receive the cash value of the employer-provided amount or service. 41 U.S.C. § 6703(4). In reading the regulation as a whole, it is clear that where – as here – the employee can elect to receive the benefit in cash, it is to be included as wages. In other words, payments made through the SCA fund by the employer to a healthcare provider might not constitute income under the regulation, but payments made to the employee in lieu of healthcare coverage do constitute income. Including the appellant's hourly wage, inclusive of the health and welfare benefit, is consistent with the regulation's definition of earned income as: "all income which is subject to Federal employment taxes (i.e., social security or Medicare taxes) or self-

9

employment taxes." 5 C.F.R. § 831.1209 (c)(1). Under the CSRS regulations, the term "wages" generally has the same meaning for purposes of income taxes under the Internal Revenue Code. *See May v. Office of Personnel Management*, 38 M.S.P.R. 534, 538 (1988); *Harnett v. Office of Personnel Management*, 29 M.S.P.R. 256, 259 (1985).

The appellant admits that the health and welfare benefit fund credit payments received are considered taxable income. IAF, Tab 41, p. 4. She admits, pursuant to OPM's instruction, that the total of the highest amounts shown as "Social Security" or "Medicare Wages" on her W-2 forms for 2016 was $48,955.00. *Id.* She further included her 2016 tax return which lists her taxable income as $48,645, an amount which also exceeds the income limitation necessary to retain her disability annuity and demonstrating that she was restored to earning capacity per OPM's regulations. The appellant did not cite to any rule, regulation, or case in support of her assertion that the health and welfare benefit she received, as income, should not be counted as such. The appellant is incorrect that it is a question of whether she is legally entitled to receive the benefit under the SCA. Rather, the question is whether the benefit constitutes income contributing to her earning capacity under OPM regulations. I find that it does.

The appellant further argues that, from an equitable standpoint, a health and welfare benefit should not be included in the calculation of income. Section 8455; however, "does not provide for any exceptions or waivers in its application. Neither OPM nor the Board has authority to waive statutory requirements or to estop the government from denying benefits as required by law." *Daniel v. Office of Personnel Management*, 245 Fed.Appx. 969, 971 (Fed. Cir 2007); *Office of Personnel Management v. Richmond*, 496 U.S. 414, 416, 434 (1990) (the government cannot be equitably estopped from denying benefits.) I find, regardless, that equitable considerations weigh in favor of including the health and welfare benefit as income, where, as here, the appellant elected to receive the

10

monetary benefit in lieu of health and welfare coverage that was already provided to her by OPM.

Accordingly, I find that the appellant was restored to earning capacity based on her 2016 earnings and is, therefore, no longer entitled to disability retirement benefits absent a successful request for reinstatement.

Collection of the overpayment is not unconscionable under the circumstances.

Where OPM claims that an individual has received an overpayment of FERS annuity benefits, it bears the burden of proving, by preponderant evidence, the existence and amount of the overpayment. *Taylor v. Officer of Personnel Management*, 87 M.S.P.R. 214 (2000). For the reasons stated above, an overpayment did occur. The appellant's retirement annuity should have been terminated by law on July 1, 2017. The unrebutted evidence is that the appellant continued to receive an annuity until March 30, 2018. Therefore, I find that OPM has shown by preponderant evidence the existence and amount of the overpayment. Based on this evidence and because the appellant does not dispute the amount of the overpayment, preponderant evidence establishes she was overpaid $15,926.00, to which $12,664.22 remains on balance. OPM proposed a collection schedule of $150 per month for 84 months, followed by a single payment of $64.22. IAF, Tab 15, pp. 9-10.

The remaining issue is whether the appellant is entitled to a waiver of the overpayment. Recovery of an overpayment from the FERS Fund will be waived when the annuitant is without fault and recovery would be against equity and good conscience. 5 U.S.C. § 8470(b). Even if an appellant is not entitled to waiver, she may be entitled to an adjustment in the recovery schedule if she shows that it would cause her financial hardship to make payments at the rate scheduled. 5 C.F.R. § 845.301. A recipient of an overpayment is without fault if she has performed no act of commission or omission that resulted in the overpayment. 5 C.F.R. § 845.302. Recovery is against equity and good

11

conscience when it would cause financial hardship, the annuitant can show that because of the overpayment she relinquished a valuable right or changed positions for the worse, or recovery would be unconscionable under the circumstances. 5 C.F.R. § 845.303. Financial hardship may exist where an individual "needs substantially all of his or her current income and liquid assets to meet current ordinary and necessary living expenses and liabilities." 5 C.F.R. § 845.304. The appellant bears the burden of establishing her entitlement to a waiver by substantial evidence. 5 C.F.R. § 845.307. Substantial evidence is defined as the degree of relevant evidence that a reasonable person, considering the record as a whole, might accept as adequate to support a conclusion, even though other reasonable people might disagree. 5 C.F.R. § 1201.56(c)(1). The burden of proof was provided to the appellant in the Board's Acknowledgment Order and reiterated in my summary of a conference call with the parties and summary of our prehearing conference. *See* IAF, Tabs, 2, 17, 30.

Under OPM regulations, the pertinent considerations in finding fault include: (1) whether payment resulted from the individual's incorrect but not necessarily fraudulent statement, which he or she should have known to be incorrect; (2) whether payment resulted from the individual's failure to disclose material facts in his or her possession which he or she should have known to be material; or (3) whether he or she accepted a payment which he or she knew or should have known to be erroneous. 5 C.F.R. § 845.302. OPM argues the appellant is not entitled to waiver because she is not completely without fault in the matter of the overpayment. Specifically, OPM states that upon final adjudication of the appellant's application for disability retirement, she was provided 'Information for Disability Annuitants' which explained that her FERS annuity would terminate if, in any calendar year, her income exceeded 80% of the current rate of base pay for the position from which she retired.

12

Here, the appellant properly reported her income for 2016. I find that there is no evidence to show that the appellant made an incorrect statement, nor is there any evidence to show that the appellant failed to disclose material evidence. As explained above, I find that the appellant relied on a reasonable, though incorrect, reading of the regulations in her belief that she was entitled to continue receiving disability annuity benefits despite her taxable income exceeding the 80% income limitation. Her diligent prosecution of her appeal confirmed her conviction that OPM was wrong in its initial letter and reconsideration decision terminating her benefits. While OPM is clear in its instructions as to where it will look on an annuitant's W-2 form to calculate earned income, I find that the notice that the appellant was provided did not specifically address her situation regarding a health and welfare benefit, and, as such, she did not knowingly accept an annuity payment which she knew or should have known to be erroneous. For these reasons, I find the appellant was not at fault for creation of the overpayment.

The appellant, however, failed to provide evidence that recovery would be against equity and good conscience. As to her burden to prove financial hardship, the appellant neither submitted an FRQ nor provided similar evidence regarding her financial ability or inability to make repayments. While I considered the appellant's statements that she "cannot afford to keep up ordinary and necessary living expenses" and that she is living "at or below the poverty level," (*see* IAF, Tab 32, pp. 7, 72), the documentation provided by the appellant does not substantiate her claims. The appellant argued that, because her disability annuity was discontinued, she lost her "Disabled Persons Homeowner Exemption" (*See* IAF, Tab 32, p. 101) and supplied evidence that her 2018 mortgage payment went from $919.77 to $1,262.95. IAF, Tab 32, p. 104. She further argued she now must use her health and welfare benefit, provided by her employer, to pay for the healthcare no longer covered by OPM. *Id.* at p. 5. Nevertheless, the appellant provided an earnings statement from January 2018 indicating a take home pay of $1,939.33 per pay period. IAF, Tab 33, p. 9 (*see also* 2018 earnings statements

13

reflecting net pay of $1,762.51 (p. 13); $1,494.05 (p. 15); $1097.97 (p. 17)). From the little information provided I cannot conclude that the appellant's take home pay of approximately $3000 to $4000 per month is insufficient to cover her mortgage of $1,262.95 per month and any other ordinary and necessary living expenses.

Based on the income information provided, I have no reason to find that a payment of $150 per month would constitute a financial hardship. The appellant did not offer any other basis on which the overpayment should not be collected. She offered no evidence that she relinquished a valuable right or changed positions for the worse based on annuity payments made after July 1, 2017, when they should have been terminated, or that recovery would otherwise be unconscionable under the circumstances. Unfortunately, I believe the appellant was so focused on contesting the existence of the overpayment, she failed to sufficiently demonstrate whether or not she could afford to repay it. Her argument that she, "definitely [does] not have additional money to pay on a debt that does not legally exist and is legally meritless" is insufficient to meet her burden that the overpayment should be waived. *See* IAF, Tab 32, pp. 61-62, 72. In sum, there is no basis for me to conclude that the appellant is entitled to waiver. Nor is there any evidence from which I can assess whether she is entitled to an adjustment in the repayment schedule. Nothing in this decision is intended to prohibit the appellant from exercising any right she may have to make a mid-collection request to OPM for lower payments, compromise, suspension, or write-off, as provided for under any applicable law, rule, regulation, or OPM guideline. *See Niemi v. Office of Personnel Management*, 69 M.S.P.R. 549, 552 (1996).

Conclusion

I find the appellant has failed to show that OPM was incorrect in determining that she was restored to earning capacity, which warranted termination of her disability retirement annuity. I further find that, while the appellant holds her belief with true conviction that she was not returned to

14

earning capacity exceeding the 80% threshold, she has not provided any justification for why she should not be held accountable for the overpayment created.

Decision

The agency's reconsideration decision is AFFIRMED.

FOR THE BOARD: _____/S/_____

Katherine Beaumont Kern
Administrative Judge

### NOTICE TO APPELLANT

This initial decision will become final on **July 10, 2019**, unless a petition for review is filed by that date. This is an important date because it is usually the last day on which you can file a petition for review with the Board. However, if you prove that you received this initial decision more than 5 days after the date of issuance, you may file a petition for review within 30 days after the date you actually receive the initial decision. If you are represented, the 30-day period begins to run upon either your receipt of the initial decision or its receipt by your representative, whichever comes first. You must establish the date on which you or your representative received it. The date on which the initial decision becomes final also controls when you can file a petition for review with one of the authorities discussed in the "Notice of Appeal Rights" section, below. The paragraphs that follow tell you how and when to file with the Board or one of those authorities. These instructions are important because if you wish to file a petition, you must file it within the proper time period.

BOARD REVIEW

15

You may request Board review of this initial decision by filing a petition for review.

If the other party has already filed a timely petition for review, you may file a cross petition for review. Your petition or cross petition for review must state your objections to the initial decision, supported by references to applicable laws, regulations, and the record. You must file it with:

The Clerk of the Board
Merit Systems Protection Board
1615 M Street, NW.
Washington, DC 20419

A petition or cross petition for review may be filed by mail, facsimile (fax), personal or commercial delivery, or electronic filing. A petition submitted by electronic filing must comply with the requirements of 5 C.F.R. § 1201.14, and may only be accomplished at the Board's eAppeal website (https://eappeal.mspb.gov).

NOTICE OF LACK OF QUORUM

The Merit Systems Protection Board ordinarily is composed of three members, 5 U.S.C. § 1201, but currently there are no members in place. Because a majority vote of the Board is required to decide a case, *see* 5 C.F.R. § 1200.3(a), (e), the Board is unable to issue decisions on petitions for review filed with it at this time. *See* 5 U.S.C. § 1203. Thus, while parties may continue to file petitions for review during this period, no decisions will be issued until at least two members are appointed by the President and confirmed by the Senate. The lack of a quorum does not serve to extend the time limit for filing a petition or cross petition. Any party who files such a petition must comply with the time limits specified herein.

For alternative review options, please consult the section below titled "Notice of Appeal Rights," which sets forth other review options.

## Criteria for Granting a Petition or Cross Petition for Review

16

Pursuant to 5 C.F.R. § 1201.115, the Board normally will consider only issues raised in a timely filed petition or cross petition for review. Situations in which the Board may grant a petition or cross petition for review include, but are not limited to, a showing that:

(a) The initial decision contains erroneous findings of material fact. (1) Any alleged factual error must be material, meaning of sufficient weight to warrant an outcome different from that of the initial decision. (2) A petitioner who alleges that the judge made erroneous findings of material fact must explain why the challenged factual determination is incorrect and identify specific evidence in the record that demonstrates the error. In reviewing a claim of an erroneous finding of fact, the Board will give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing.

(b) The initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case. The petitioner must explain how the error affected the outcome of the case.

(c) The judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case.

(d) New and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. To constitute new evidence, the information contained in the documents, not just the documents themselves, must have been unavailable despite due diligence when the record closed.

As stated in 5 C.F.R. § 1201.114(h), a petition for review, a cross petition for review, or a response to a petition for review, whether computer generated, typed, or handwritten, is limited to 30 pages or 7500 words, whichever is less. A reply to a response to a petition for review is limited to 15 pages or 3750 words, whichever is less. Computer generated and typed pleadings must use no less than

17

12 point typeface and 1-inch margins and must be double spaced and only use one side of a page. The length limitation is exclusive of any table of contents, table of authorities, attachments, and certificate of service. A request for leave to file a pleading that exceeds the limitations prescribed in this paragraph must be received by the Clerk of the Board at least 3 days before the filing deadline. Such requests must give the reasons for a waiver as well as the desired length of the pleading and are granted only in exceptional circumstances. The page and word limits set forth above are maximum limits. Parties are not expected or required to submit pleadings of the maximum length. Typically, a well-written petition for review is between 5 and 10 pages long.

If you file a petition or cross petition for review, the Board will obtain the record in your case from the administrative judge and you should not submit anything to the Board that is already part of the record. A petition for review must be filed with the Clerk of the Board no later than the date this initial decision becomes final, or if this initial decision is received by you or your representative more than 5 days after the date of issuance, 30 days after the date you or your representative actually received the initial decision, whichever was first. If you claim that you and your representative both received this decision more than 5 days after its issuance, you have the burden to prove to the Board the earlier date of receipt. You must also show that any delay in receiving the initial decision was not due to the deliberate evasion of receipt. You may meet your burden by filing evidence and argument, sworn or under penalty of perjury (*see* 5 C.F.R. Part 1201, Appendix 4) to support your claim. The date of filing by mail is determined by the postmark date. The date of filing by fax or by electronic filing is the date of submission. The date of filing by personal delivery is the date on which the Board receives the document. The date of filing by commercial delivery is the date the document was delivered to the commercial delivery service. Your petition may be rejected and returned to you if you fail to provide a statement of how you served your petition on the other party. *See* 5 C.F.R.

18

§ 1201.4(j). If the petition is filed electronically, the online process itself will serve the petition on other e-filers. *See* 5 C.F.R. § 1201.14(j)(1).

A cross petition for review must be filed within 25 days after the date of service of the petition for review.

### NOTICE TO AGENCY/INTERVENOR

The agency or intervenor may file a petition for review of this initial decision in accordance with the Board's regulations.

notice OF APPEAL rights

You may obtain review of this initial decision only after it becomes final, as explained in the "Notice to Appellant" section above. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this decision when it becomes final, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court

19

within **60 calendar days** of <u>the date this decision becomes final</u>. 5 U.S.C.
§ 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the
Federal Circuit, you must submit your petition to the court at the
following address:

U.S. Court of Appeals<br>
for the Federal Circuit<br>
717 Madison Place, N.W.<br>
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal
Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular
relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is
contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to
the U.S. Court of Appeals for the Federal Circuit, you may visit our website at
http://www.mspb.gov/probono for information regarding pro bono representation
for Merit Systems Protection Board appellants before the Federal Circuit. The
Board neither endorses the services provided by any attorney nor warrants that
any attorney will accept representation in a given case.

**(2) <u>Judicial or EEOC review of cases involving a claim of
discrimination</u>.** This option applies to you <u>only</u> if you have claimed that you
were affected by an action that is appealable to the Board and that such action
was based, in whole or in part, on unlawful discrimination. If so, you may obtain
judicial review of this decision—<u>including a disposition of your discrimination
claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the
U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after this
decision becomes final</u> under the rules set out in the Notice to Appellant section,
above. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*,
582 U.S. _____ , 137 S. Ct. 1975 (2017). If the action involves a claim of

20

discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a courtappointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after this decision becomes final as explained above. 5 U.S.C. § 7702(b)(1).

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and you wish to challenge the Board's rulings on your whistleblower claims only, excluding all other issues, then you may file a petition for judicial review

21

with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction. The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date this decision becomes final</u> under the rules set out in the Notice to Appellant section, above. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals<br>
for the Federal Circuit<br>
717 Madison Place, N.W.<br>
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx